**STALWART LAW GROUP**
Dylan Ruga (DR1308)
41 East 11th Street, 11th Fl.
New York, New York 10003
Phone: (212) 651-9070
Email: dylan@stalwartlaw.com

Paul A. Traina (*pro hac vice* application forthcoming)
Ian P. Samson (*pro hac vice* application forthcoming)
Ji-In Houck (*pro hac vice* application forthcoming)
1100 Glendon Ave., 17th Fl.
Los Angeles, California 90024
Phone: (310) 954-2000
Email: paul@stalwartlaw.com
Email: ian@stalwartlaw.com
Email: jiin@stalwartlaw.com

*Attorneys for Plaintiffs and Proposed Class Representatives*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
KEVIN SHULMAN and CARAN ROSS, in their | Civil Action No. 17-9330
capacities as co-trustees of the FLORENCE |
SHULMAN POUROVER TRUST, on behalf of | **CLASS ACTION**
itself and all others similarly situated, | **COMPLAINT AND JURY**
| **DEMAND**
                     Plaintiff, |
|
   -against- |
|
BECKER & POLIAKOFF, LLP and CHAITMAN |
LLP, |
|
                    Defendants. |
--------------------------------------------------------------- X

For its claims against Defendant Becker and Poliakoff, LLP ("B&P") and Defendant Chaitman LLP, Plaintiffs and Proposed Class Representatives Kevin Shulman and Caran Ross, in their capacities as co-trustees of the Florence Shulman Pourover Trust ("FSPT"), on behalf of itself and a class of others similarly-situated, through its attorneys Stalwart Law Group, allege as follows:

## INTRODUCTION

1. On or about December 11, 2008, when Bernie Madoff was arrested, thousands of people learned that they had fallen victim to the largest Ponzi scheme in American history. Many had lost their life savings and were desperate to find someone to help them recover.

2. Although many lawyers offered their services, Helen Chaitman stood apart from the rest because she vowed to stand up to Irving Picard, who was responsible for clawing back funds received by "net winners" and distributing those funds to "net losers."

3. Chaitman's self-promotion as a savior for other Madoff victims paid off. Within a short amount of time, she had signed up hundreds of clients who agreed to pay her hourly fees to defend them against Mr. Picard's clawback lawsuits.

4. Chaitman's clients, however, had been swindled twice. First by Madoff, and again by Chaitman.

5. Chaitman's greed caused her to violate the first rule of professional ethics: an attorney cannot simultaneously represent clients with directly adverse interests. Chaitman represented <u>both</u> net winners and net losers in a zero-sum game; the more money collected from some of her clients (the net winners), the more available to be distributed to her other clients (the net losers). Chaitman's clients, therefore, were in direct conflict with each other.

6. To make matters worse, Chaitman herself is a net loser, which means she personally stands to receive money taken from her net winner clients. This conflict cannot be waived.

7. At the same time, Chaitman represented a third group of Madoff investors who sought to keep assets out of Mr. Picard's liquidation proceedings altogether: the so-called "early investors." These clients claim that some of their Madoff profits are not subject to clawbacks because they allegedly were booked before Madoff turned his "legitimate" operation into a fraud. "Early investors" are thus in conflict with both net losers and net winners: Net losers miss out on contribution from early investors to defray their losses, and net winners find themselves responsible for a larger shortfall.

8. Beyond the irreconcilable conflict, Chaitman bilked hundreds of thousands of dollars (if not more) from each of her net winner clients by actively discouraging them from settling Mr. Picard's clawback actions. When asked, Chaitman mispresented to her net winner clients that Mr. Picard never would settle for less than 100% of what he claimed he was owed. In reality, Mr. Picard imposed no such all-or-nothing condition on settlements. This misrepresentation allowed Chaitman to continue billing these clients hourly for unnecessary—and often unproductive—work.

9. Chaitman actively concealed basic information from her net winner clients, including her hourly rate (as well as the hourly rates of other, unidentified persons charging time to the file), what specific work she was performing, and how much time she spent on those unknown tasks. Instead, Chaitman simply forwarded her net winner clients invoices stating the total amount allegedly due, without any backup or description.

10. This lawsuit is brought to vindicate the rights of Chaitman's clients, who trusted that she would protect their best interests but have now discovered her misconduct.

**PARTIES**

11. Plaintiff and Proposed Class Representative Kevin Shulman, in his capacity as co-trustee of the FSPT, is a resident and citizen of the State of New Jersey.

12. Plaintiff and Proposed Class Representative Caran Ross, in her capacity as co-trustee of the FSPT, is a resident and citizen of the State of California.

13. On information and belief, Defendant B&P is a limited liability partnership organized under the laws of the State of New York and with its principal place of business at 45 Broadway, 8th Floor, New York, New York 10006. B&P is a law firm, and Helen Chaitman was a member of the firm at least from 2008 to 2015, when she left to form Chaitman LLP.

14. On information and belief, Defendant Chaitman LLP is a limited liability partnership organized under the laws of the State of New York and with its principal place of business at 465 Park Avenue, New York, New York 10022. Chaitman LLP is a law firm founded by Helen Chaitman in 2015 after she left B&P.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

16. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and at least one member of the proposed class is a citizen of a state different from any defendant.

17. This Court has personal jurisdiction over Defendants. Defendants are each entities organized under the laws of the State of New York and maintain their principal places of business within the State of New York and within this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because both Defendants maintain their principal places of business within this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## NATURE OF THE CASE

19. FSPT brings this action against Defendants for breach of contract, breach of fiduciary duty, and unjust enrichment arising from Defendants' representation of FSPT and similarly-situated entities and individuals in litigation stemming from the winding up of Bernard L. Madoff Investment Securities ("BLMIS").

## CLASS ACTION ALLEGATIONS

20. FSPT brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who were represented by and paid legal fees to B&P and/or Chaitman LLP in connection with the BLMIS liquidation litigation. Excluded from the class are defendants, members of the immediate family of each defendant, any firm, trust, or corporation in which defendants or any of their officers, directors, managers, or employees have a controlling interest or which is related or affiliated with any defendant, and the legal representatives, assigns, agents, affiliates, and heirs of any such excluded party.

21. Members of the proposed class are so numerous that joinder of all members is impracticable. B&P and Chaitman LLP represented at least more than 40 individual clients in the BLMIS litigation, and, on information and belief, represented hundreds of such clients. The identities of Defendants' clients may be ascertained by records kept by Defendants, and notice can

be provided to such clients via published notice, first-class mail, or via electronic means of communication (*e.g.*, email).

22. FSPT will fairly and adequately represent and protect the interests of proposed class members. FSPT has retained competent counsel experienced in class action litigation to further such protection and to prosecute this action in the best interest of the class.

23. Plaintiff's claims are typical of the claims of those held by other proposed class members because Plaintiff's and class members' damages and entitlement to equitable relief arise from and were caused by the course of conduct complained of herein. FSPT does not have any interests adverse to, or in conflict with, members of the proposed class with respect to the instant action.

24. Common questions of law and fact exist as to all FSPT and proposed class members and predominate over any questions affecting solely individual members of the class. Among the questions of law and fact are:

   a. Did Chaitman represent net winners, net losers, and early investors?

   b. Was Chaitman's representation of both net winners and net losers a waivable conflict of interest?

   c. Was Chaitman's representation of both net winners and early investors a waivable conflict?

   d. Was Chaitman's representation of both net losers and early investors a waiver conflict?

   e. If Chaitman's conflict of interest could be waived, did FSPT and class members waive it?

    f.   Did Chaitman overbill FSPT and class members by performing unnecessary work, or work that was not in the best interest of FSPT and the class members?

    g.   Were the Defendants unjustly enriched by Chaitman's misconduct?

    h.   Are FSPT and class members entitled to disgorge the fees they paid to Defendants?

25.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. FSPT knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## GENERAL ALLEGATIONS

**A. Bernard Madoff's Ponzi Scheme and Its Collapse**

26.    In late 2008, as the global financial crisis began to shake the foundations of the world economy, a fraud of unfathomable scope was uncovered. Bernard L. Madoff, the principal of BLMIS, revealed that his company's long run of apparent investment success was, in fact, a gargantuan Ponzi scheme. That revelation set off a chain of events leading to the actions described in this complaint.

27.    For several years prior to the discovery of the fraud, BLMIS attracted numerous investors and billions of dollars of assets, primarily due to its apparent success. That success was fictional. Rather than invest customer funds in his purported "split-strike conversion" investment scheme, Madoff simply used funds from new investors to pay off old ones, generating fraudulent account statements and trading documents along the way.

28.    Eventually, as the new money dried up and was insufficient to cover the volume of withdrawals sought by old investors, Madoff's fraud was revealed. Madoff was arrested, pled guilty to several criminal charges, and is currently serving a lengthy prison term.

29. Meanwhile, BLMIS clients, including Plaintiff and members of the proposed class, suddenly found their life savings embroiled in litigation designed to clean up the mess.

### B. BLMIS Liquidation Proceedings and Litigation

30. Shortly after the revelation of Madoff's fraud, the government stepped in, appointing Irving Picard as the trustee for the liquidation of BLMIS pursuant to the Securities Investor Protection Act ("SIPA"). Among other things, Mr. Picard was charged with determining each customer's "net equity" in BLMIS as required by SIPA—in other words, the amount of the liquidated BLMIS assets to which each customer was entitled.

31. Mr. Picard determined that BLMIS clients' net equity by the "net investment method" by which each customer's deposits were assessed against that customer's withdrawals. That method created two classes of customers. On one hand were "net winners," or those who had received more from BLMIS then they had invested. On the other were "net losers," or those who had invested more than they had received. The Second Circuit approved of the trustee's methodology in 2011. *See In re Bernard L. Madoff Inv. Securities LLC*, 654 F.3d 229 (2d Cir. 2011).

32. On determination of "net equity" vis-à-vis BLMIS set the stage for Mr. Picard's next stage of litigation: attempting to make all BLMIS customers as close to whole as possible. That process necessitated seeking money from "net winners" to provide payments to "net losers" such that the two groups would equalize as close as possible to whole.

33. "Net winners" and "net losers" have divergent interests. Whereas "net winners" would attempt to lower their total liability to the trustee's actions, "net losers" hoped to maximize the recovery from "net winners" to increase their own recovery from the trust assets.

34. In addition, some investors in BLMIS argue that, with respect to at least some of their profits, they are neither "net winners" nor "net losers" because their investments occurred before Madoff converted BLMIS to a Ponzi scheme. These "early investors" claim that Mr. Madoff's scheme operated as a legitimate trading operation at the time they invested, and only later became a Ponzi scheme. Thus, the "early investors" assert that their pre-Ponzi profits are not part of the BLMIS liquidation proceedings and not subject to clawbacks by the trustee.

### C. Defendants' Representation of FSPT and Members of the Proposed Class

35. From the time of Madoff's arrest until 2015, Chaitman agreed to represent, and in fact did represent, both net winners and net losers at B&P. During this time, Chaitman represented net winners on an hourly-fee basis and she represented net losers on a contingency fee basis.

36. In 2015, Chaitman formed Chaitman LLP. Since then, she has continued to agree to represent, and in fact has represented, both net winners and net losers. She has continued to represent net winners on an hourly-fee basis and net losers on a contingency fee basis.

37. On information and belief, from the time of Madoff's arrest until 2015, while at B&P, Chaitman agreed to represent, and in fact did represent, early investors on an hourly basis.

38. On information and belief, since founding Chaitman LLP and leaving B&P, Chaitman agreed to represent, and in fact did represent, early investors on an hourly basis.

39. FSPT first retained Chaitman at B&P in or around February 2011. FSPT reaffirmed Chaitman's representation in 2015 when Chaitman left B&P and formed Chaitman LLP. At all times, Chaitman charged FSPT hourly fees for her services.

40. Chaitman similarly represented members of the Proposed Class while at B&P from the time of Madoff's arrest until 2015.

41. Chaitman similarly represented, and continues to represent, members of the Proposed Class while at Chaitman LLP from 2015 to date.

## FIRST CLAIM

### (Breach of Fiduciary Duty)

### Against B&P and Chaitman LLP

42. FSPT restates and incorporates by reference each of the foregoing paragraphs.

43. This count states a claim for breach of contract by FSPT and members of the proposed class against Defendants.

44. As lawyers for FSPT and members of the proposed class, Defendants owed them fiduciary duties, including the duty of loyalty.

45. Defendants breached their duty of loyalty to FSPT and members of the proposed class because Chaitman simultaneously represented other clients with interests directly adverse to FSPT and members of the proposed class.

46. Defendants further breached their duty of loyalty to FSPT and members of the proposed class because Chaitman herself was a net loser and therefore stood to benefit in an amount directly correlated to the amount Mr. Picard clawed back from her net winner clients.

47. FSPT and the members of the proposed class therefore are entitled to recover from B&P and Chaitman LLP all compensatory damages caused by Defendants' breaches of their fiduciary duty.

48. Defendants' conduct amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter Defendants from engaging in similar conduct in the future. Accordingly, FSPT and the

members of the proposed class pray for an award of punitive damages against B&P and Chaitman LLP.

## SECOND CLAIM

**(Breach of Contract)**

**Against B&P and Chaitman LLP**

49. FSPT restates and incorporates by reference each of the foregoing paragraphs.

50. This count states a claim for breach of contract by FSPT and members of the proposed class against Defendants.

51. As alleged herein, FSPT and each of the members of the proposed class engaged Defendants pursuant to an agreement whereby FSPT and each of the members of the proposed class promised to pay Defendants an hourly fee in exchange for Chaitman performing services that were necessary and in the best interests of FSPT and members of the proposed class.

52. Defendants breached their contracts with FSPT and members of proposed class by billing them for services that were not necessary or in their best interests.

53. FSPT and the members of the proposed class therefore pray that the Court order disgorgement and restitution of any and all attorneys' fees paid to B&P and Chaitman LLP by FSPT or members of the proposed class.

## THIRD CLAIM

**(Unjust Enrichment)**

**Against B&P and Chaitman LLP**

54. FSPT restates and incorporates by reference each of the foregoing paragraphs.

55. This count states a claim for unjust enrichment by FSPT and members of the proposed class against Defendants.

56. As alleged herein, Defendants were enriched by FSPT and members of the proposed class in the form of fees paid for legal services, including, but not limited to, hourly fees, retainers, and contingency fees.

57. The enrichment of Defendants as alleged was at the expense of FSPT and members of the proposed class.

58. Equity and good conscience do not permit Defendants to retain the enrichment they received at the expense of FSPT and members of the proposed class. As alleged herein, the attorney-client relationships formed between FSPT and members of the proposed class on the one hand and Defendants on the other were improperly and irrevocably tainted by non-waivable conflicts.

59. Defendants also, as alleged herein, billed and were paid for needless and quixotic legal work, ostensibly for the benefit of FSPT and members of the proposed class, but which in reality only benefitted Defendants in the form of increased fees.

60. FSPT and the members of the proposed class therefore pray that the Court order disgorgement and restitution of any and all attorneys' fees paid to B&P and Chaitman LLP by FSPT or members of the proposed class.

## **PRAYER FOR RELIEF**

FSPT demands trial by jury, and respectfully prays that the Court enter judgment in favor of FSPT and members of the proposed class and against B&P and Chaitman LLP on all claims for relief, and grant FSPT and members of the proposed class the following relief:

A. An award of general or specific damages according to proof;

B. An order of restitution to FSPT and members of the proposed class of all amounts obtained by B&P and Chaitman LLP by means of their wrongful acts described above;

C. An order awarding FSPT its costs and attorney fees incurred in prosecuting this action;

D. An award of pre-judgment interest, as appropriate; and

E. An award of such other relief as the Court may determine just and proper.

Dated: November 29, 2017   *Respectfully submitted,*
              **STALWART LAW GROUP**

              _____
              Dylan Ruga (DR1308)
              41 East 11th Street, 11th Fl.
              New York, New York 10003
              Phone:  (212) 651-9070
              Email:  dylan@stalwartlaw.com

              *Attorneys for Plaintiff and Proposed Class Representative*

**JURY DEMAND**

FSPT hereby demands a jury trial as to all issues so triable.

Dated: November 29, 2017

*Respectfully submitted,*
**STALWART LAW GROUP**

_____
Dylan Ruga (DR1308)
41 East 11th Street, 11th Fl.
New York, New York 10003
Phone: (212) 651-9070
Email: dylan@stalwartlaw.com

*Attorneys for Plaintiff and Proposed Class Representative*