UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
KEVIN SHULMAN and CARAN ROSS,          :
in their capacities as co-trustees     :
of the FLORENCE SHULMAN POUROVER       :
TRUST; and ESTELLE HARWOOD,            :
individually and in her capacity as    :
trustee of the ESTELLE HARWOOD         :
REVOCABLE TRUST; on behalf of          :      17 Civ. 9330 (VM)
themselves and all others similarly    :
situated,                              :      **DECISION AND ORDER**
                                       :
                    Plaintiffs,        :
                                       :
     - against -                       :
                                       :
CHAITMAN LLP and                       :
BECKER & POLIAKOFF, LLP,               :
                                       :
                    Defendants.        :
-------------------------------------X

**VICTOR MARRERO, United States District Judge.**

## I.   BACKGROUND

Plaintiffs Kevin Shulman and Caran Ross, in their
capacities as co-trustees of the Florence Shulman Pourover
Trust, and Estelle Harwood, individually and in her capacity
as trustee of the Estelle Harwood Revocable Trust, on behalf
of themselves and all others similarly situated
(collectively, "Plaintiffs"), brought this action against
defendants Chaitman LLP ("Chaitman") and Becker & Poliakoff,
LLP ("B&P," and together with Chaitman, "Defendants")
alleging breach of fiduciary duty, breach of contract, unjust
enrichment, and fraud related to Defendants' representation
of Plaintiffs in various lawsuits stemming from the

liquidation of Bernard L. Madoff Investment Securities LLC. (See "First Amended Complaint," Dkt. No. 13.)

By Order dated August 9, 2018 (Dkt. No. 66), the Court referred general pretrial matters and dispositive motions to Magistrate Judge James L. Cott. Specifically, the Court referred Defendants' motions to dismiss for lack of subject matter jurisdiction. (See "Defendants' Motions to Dismiss," Dkt. Nos. 54, 58.) On September 21, 2018, after briefing for the Defendants' Motions to Dismiss concluded, Plaintiffs filed a motion for leave to amend the First Amended Complaint. (See "Plaintiffs' Motion to Amend," Dkt. No. 92.)

On April 11, 2019, Magistrate Judge Cott issued a Report and Recommendation, a copy of which is attached and incorporated herein, recommending that Defendants' Motions to Dismiss be denied and Plaintiffs' Motion to Amend be granted. (See "Report," Dkt. No. 118 at 2-3.)

On April 25, 2019, Defendants filed timely objections to the Report and Recommendation, and challenged its findings and conclusions on various grounds. (See "Defendants' Objections," Dkt. Nos. 119, 120.) On May 8, 2019, Plaintiffs filed timely responses to the Defendants' Objections. (See Dkt. No. 121.)

For the reasons stated below, the Court adopts the recommendations of the Report in their entirety.

2

## II.  **STANDARD OF REVIEW**

A district court evaluating a magistrate judge's report may adopt those portions of the report to which no "specific written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. Fed. R. Civ. P. 72(b); see also Thomas v. Arn, 474 U.S. 140, 149 (1985). However, "[w]hen a timely and specific objection has been made, the court is obligated to review the contested issues de novo." Fischer v. Forrest, 286 F. Supp. 3d 590, 600-01 (S.D.N.Y. 2018) (citing Fed. R. Civ. P. 72(b) and Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998)). A district court is not required to review any portion of a magistrate judge's report that is not the subject of an objection. See Thomas, 474 U.S. at 149.

Because motions to dismiss require a dispositive determination of the parties' claims, a district court's review of a magistrate judge's determination of such a motion is evaluated under the de novo standard applicable to dispositive matters under Federal Rule of Civil Procedure 72(b), as opposed to the clearly erroneous or contrary to law standard applicable to a magistrate judge's ruling as to non-dispositive matters under Federal Rule of Civil Procedure Rule 72(a). A district judge may accept, set aside, or modify,

3

in whole or in part, the findings and recommendations of the magistrate judge. See Fed. R. Civ. P. 72(b).

### III. **DISCUSSION**

Upon a de novo review of the full factual record in this litigation, including the pleadings and the parties' respective papers submitted in connection with the underlying motions and in this proceeding, as well as the Report and applicable legal authorities, the Court reaches the same conclusions as Magistrate Judge Cott. The Court further concludes that the findings, reasoning, and legal support for the recommendations made in the Report are consistent with applicable law as set forth in the cases and statutes relied upon therein, and are thus warranted. Accordingly, for substantially the reasons set forth in Magistrate Judge Cott's thorough and detailed Report, the Court adopts in their entirety the Report's factual and legal analyses and determinations, as well as its substantive recommendations, as the Court's ruling on Defendants' Motions to Dismiss (Dkt. Nos. 54, 58) and Plaintiffs' Motion to Amend (Dkt. No. 92).

### IV. **ORDER**

For the reasons discussed above, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge James Cott dated April 11, 2019 (Dkt. No. 118) is adopted in its entirety, and the objections of defendants

4

Chaitman LLP and Becker & Poliakoff, LLP (Dkt. Nos. 119, 120) are **DENIED.** It is further

**ORDERED** that the motion for leave to amend the First Amended Complaint (Dkt. No. 92) of plaintiffs Kevin Shulman, Caran Ross, and Estelle Harwood is **GRANTED.**

**SO ORDERED.**

Dated:     New York, New York
           19 July 2019

_____
                              Victor Marrero
                                  U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

KEVIN SHULMAN and CARAN ROSS,
in their capacities as co-trustees of the
FLORENCE SHULMAN POUROVER
TRUST; and ESTELLE HARWOOD,
individually and in her capacity as trustee
of the ESTELLE HARWOOD REVOCABLE
TRUST; on behalf of themselves and all
others similarly situated,

               Plaintiffs,

    -against-

BECKER & POLIAKOFF, LLP and
CHAITMAN LLP,

             Defendants.



------------------------------------------------------------ X

CHAITMAN LLP,

             Counterclaim Plaintiff,

          -against-


KEVIN SHULMAN, individually and in his
capacity as co-trustee of the FLORENCE
SHULMAN POUROVER TRUST; CARAN
ROSS individually; KEVIN SHULMAN as
power of attorney for THE ALVIN E.
SHULMAN POUROVER TRUST; KEVIN
SHULMAN as trustee of THE ALVIN E.
SHULMAN POUROVER TRUST; KEVIN
SHULMAN as trustee for ALVIN E.
SHULMAN INDIVIDUALLY,

            Counterclaim Defendants.
----------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _04/11/2019__

**REPORT AND
RECOMMENDATION**

No. 17-CV-9330 (VM) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Victor Marrero, United States District Judge:**

Plaintiffs Kevin Shulman and Caran Ross, in their capacities as co-trustees of the Florence Shulman Pourover Trust, and Estelle Harwood, individually and in her capacity as trustee of the Estelle Harwood Revocable Trust, brought this class action against defendants Becker & Poliakoff, LLP and Chaitman LLP for breach of fiduciary duty, breach of contract, unjust enrichment, and fraud. Plaintiffs' claims arise from defendants' legal representation of them and similarly situated entities and individuals in separate lawsuits related to the liquidation of Bernard L. Madoff Investment Securities LLC.

Defendants have each moved to dismiss this action, arguing that the Court lacks subject-matter jurisdiction over this case. Plaintiffs oppose defendants' motions, asserting that the Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d). They contend that the jurisdictional requirements of the Act—minimal diversity, 100 or more class members, and an amount in controversy of at least $5,000,000—have been satisfied and defendants' motions should be denied.

Before the Court is also plaintiffs' motion for leave to amend the First Amended Complaint. Plaintiffs argue that there is good cause to further amend the complaint to add Helen Davis Chaitman, Esq., former Becker and Poliakoff, LLP attorney and currently Chaitman LLP's principal attorney, as a defendant to this lawsuit. They assert that the amendment would cure any alleged jurisdictional

deficiencies.  Both defendants oppose plaintiffs' motion, arguing that plaintiffs have failed to demonstrate good cause to amend and that their proposed amendment is a futile attempt to cure the jurisdictional defects of this case.

For the reasons discussed below, the Court has jurisdiction over this lawsuit pursuant to the Class Action Fairness Act.  Thus, I recommend that defendants' motions to dismiss be denied.  In addition, plaintiffs have established good cause to further amend their complaint.  Therefore, I recommend that if necessary plaintiffs' motion for leave to amend the First Amended Complaint be granted.

## I.    BACKGROUND

### A.    Facts Alleged in the First Amended Complaint

Plaintiffs' lawsuit concerns the legal representation that Helen Chaitman provided to the putative class—victims of the Bernard L. Madoff Investment Securities LLC ("BLMIS") ponzi scheme—when she was their counsel while at the law firms Becker & Poliakoff, LLP ("B&P") and Chaitman LLP.  *See* First Amended Complaint ("FAC") dated January 3, 2018, Dkt. No. 13.  As described by plaintiffs, in the underlying liquidation proceedings following the revelation of BLMIS' fraud, trustee Irving Picard was charged with determining the "net equity" of the BLMIS investors (the amount of liquidated BLMIS assets to which each investor was entitled), and redistributing funds from the so-called "net winners" (those who received more funds from BLMIS than they had invested) to the "net losers" (those who invested more funds than they had received).  *Id.* ¶¶ 2, 33–35.

3

Plaintiffs allege that Helen Chaitman "represented <u>both</u> net winners and net losers in a zero-sum game; the more money collected from some of her clients (the net winners), the more available to be distributed to her other clients (the net losers)." *Id.* ¶ 5. They further allege that Helen Chaitman represented a third group of investors—so-called "early investors" (investors who claim that their BLMIS profits are not subject to clawback actions because they were made before the legitimate operation turned into a fraud)—who "sought to keep assets out of Mr. Picard's liquidation proceedings altogether." *Id.* ¶ 7.

Plaintiffs also assert that Helen Chaitman herself is a "net loser" and "personally stands to receive money taken from her net winner clients," but nonetheless represented these three groups of clients despite this "irreconcilable conflict," and "bilked hundreds of thousands of dollars (if not more) from each of her net winner clients by actively discouraging them from settling Mr. Picard's clawback actions." *Id.* ¶¶ 6, 8. Plaintiffs contend that Helen Chaitman represented to "net winner" clients that "continued, full-scale litigation was the only viable option" because Picard "never would settle for less than 100% of what he claimed he was owed." *Id.* ¶¶ 8, 47. They allege that Picard "imposed no such all-or-nothing condition on settlements," and that Helen Chaitman's misrepresentations induced "full-scale litigation rather than attempts to settle," and "allowed [her] to continue billing [ ] clients hourly for unnecessary—and often unproductive—work." *Id.* ¶¶ 8, 74.

Plaintiffs assert four causes of action against defendants—breach of fiduciary duty, breach of contract, unjust enrichment, and fraud—and seek compensatory damages and restitution of attorneys' fees paid to B&P and Chaitman LLP, as well as plaintiffs' attorneys' fees and costs. *See id.* ¶¶ 51–80. Plaintiffs also seek an award of punitive damages for their breach of fiduciary duty claim, asserting that "[d]efendants' conduct amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter [d]efendants from engaging in similar conduct in the future." *Id.* ¶ 57.

Plaintiffs allege that "[t]his Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and at least one member of the proposed class is a citizen of a state different from any defendant." *Id.* ¶ 16. The FAC defines the proposed class as "all persons who were represented by and paid legal fees to B&P and/or Chaitman LLP in connection with the BLMIS liquidation litigation." *Id.* ¶ 20. Plaintiffs allege "B&P and Chaitman LLP represented at least more than 40 individual clients in the BLMIS litigation, and, on information and belief, represented hundreds of such clients." *Id.* ¶ 24.

The named plaintiffs, Kevin Shulman, Caran Ross, and Estelle Harwood, are residents and citizens of New Jersey, California, and Florida, respectively. *See id.* ¶¶ 11–13. Both B&P and Chaitman LLP are limited liability partnership law firms organized under the laws of New York State, with principal places of business in

5

New York, New York. *See id.* ¶¶ 14–15. Helen Chaitman was a member of B&P

from February 15, 2010 until September 19, 2015, after which she left B&P and

founded Chaitman LLP in October 2015. *Id.*; B&P Answer dated May 7, 2018 ¶ 14,

Dkt. No. 31; Chaitman LLP Answer dated May 7, 2018 ¶ 39, Dkt. No. 32.

## B.    Procedural History

On November 29, 2017, plaintiffs Kevin Shulman and Caran Ross, in their

capacities as co-trustees of the Florence Shulman Pourover Trust, filed their class

action complaint against B&P and Chaitman LLP asserting three causes of action:

breach of fiduciary duty, breach of contract, and unjust enrichment. *See* Dkt. No. 1.

On January 3, 2018, plaintiffs submitted their FAC to add Estelle Harwood as a

plaintiff, individually and in her capacity as trustee of the Estelle Hardwood

Revocable Trust, and to bring a fourth claim for fraud. *See* Dkt. No. 13.

From January through March 2018, defendants sent various letters to the

Court requesting dismissal of the FAC. *See* Dkt. Nos. 14, 17–18, 20–21. On March

29, 2018, the Court held a telephone conference with the parties to address their

submissions and advised them that "the [FAC] contains sufficiently developed and

particular factual allegations supporting [p]laintiffs' legal claims to survive a

motion to dismiss." Dkt. No. 28, at 5. The Court construed Chaitman LLP's

January and February letters and B&P's February and March letters as motions to

dismiss the FAC pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and

denied both motions. *See id.*

On May 7, 2018, defendants filed their respective answers to the FAC. *See*
Dkt. Nos. 31–32. B&P's answer included cross-claims against Chaitman LLP for
contribution and indemnification, *see* Dkt. No. 31, at 12; and Chaitman LLP
brought counterclaims against plaintiffs Kevin Shulman individually, as trustee for
the Florence Shulman Pourover Trust, the Alvin E. Shulman Pourover Trust, and
Alvin E. Shulman individually, and as power of attorney for the Alvin E. Shulman
Pourover Trust; and Caran Ross individually, *see* Dkt. No. 32, at 27. On June 4,
2018, plaintiffs Kevin Shulman and Caran Ross filed their answer to Chaitman
LLP's counterclaims. *See* Dkt. No. 35.

On June 8, 2018, this case was referred to me for general pretrial
supervision. *See* Dkt. No. 36.[1] On June 14, 2018, I scheduled an initial case
management conference for June 22, 2018 and directed the parties to submit a joint
proposed scheduling order in advance of the conference. *See* Dkt. No. 38, at 2. On
June 20, 2018, the parties emailed a joint proposed scheduling order to the Court
with various deadlines, including an already expired June 8, 2018 deadline to
amend or join parties.

By Order dated June 21, 2018, I directed the parties to be prepared to
address the question of the Court's subject-matter jurisdiction at the June 22
conference. *See* Dkt. No. 41. Following the June 22 conference, I issued a

---

[1] On August 9, 2018, an Amended Order of Reference was made to include all
dispositive motions. *See* Dkt. No. 66.

scheduling order, *inter alia*, for defendants' Rule 12(h)(3) motions to dismiss for lack of subject-matter jurisdiction. *See* Dkt. No. 42.

On July 31, 2018, defendants submitted their respective motions to dismiss, along with supporting memoranda of law, declarations, and affidavits. *See* Chaitman LLP Notice of Motion, Dkt. No. 54; Memorandum of Law in Support of Chaitman LLP's Motion to Dismiss the First Amended Complaint ("Chaitman Mem."), Dkt. No. 56; Declaration of Joan M. Gilbride, Esq., Dkt. No. 55; Declaration of Helen Davis Chaitman, Esq. ("Chaitman Decl.") dated July 30, 2018, Dkt. No. 55-3; Becker & Poliakoff, LLP Notice of Motion, Dkt. No. 58; Memorandum of Law in Support of Defendant Becker & Poliakoff's Motion to Dismiss Plaintiffs' First Amended Complaint ("B&P Mem."), Dkt. No. 61; Declaration of Jamie R. Wozman, Esq. ("Wozman Decl."), Dkt. No. 59; Affidavit of Victor J. DiGioia, Esq. ("DiGioia Aff."), Dkt. No. 60.

On August 14, 2018, plaintiffs submitted their opposition papers. *See* Plaintiffs' Memorandum of Law in Opposition to Chaitman LLP's Motion to Dismiss the First Amended Complaint for Lack of Subject Matter Jurisdiction ("Pls. Opp. Mem. as to Chaitman LLP"), Dkt. No. 72; Affidavit of Dylan Ruga, Esq., in Support of Plaintiffs' Opposition to Chaitman LLP's Motion to Dismiss the First Amended Complaint ("Ruga Aff. as to Chaitman LLP"), Dkt. No. 72-1; Plaintiffs' Memorandum of Law in Opposition to Becker & Poliakoff, LLP's Motion to Dismiss the First Amended Complaint ("Pls. Opp. Mem. as to B&P"), Dkt. No. 73; Affidavit of Dylan Ruga, Esq., in Support of Plaintiffs' Opposition to Becker and Poliakoff,

LLP's Motion to Dismiss the First Amended Complaint ("Ruga Aff. as to B&P"),
Dkt. No. 73-1.

On August 28, 2018, defendants submitted their respective reply papers in
further support of their motions to dismiss. *See* Reply Memorandum of Law in
Further Support of Chaitman LLP's Motion to Dismiss the First Amended
Complaint ("Chaitman Reply Mem."), Dkt. No. 84; Declaration of David Bloom,
Esq., Dkt. No. 85; Affidavit of Lourdes Blanco on Behalf of Chaitman LLP ("Blanco
Aff."), Dkt. No. 85-1; Reply Memorandum of Law in Support of Defendant Becker &
Poliakoff LLP's Motion to Dismiss Plaintiffs' First Amended Complaint ("B&P Reply
Mem."), Dkt. No. 89; Reply Declaration of Jamie R. Wozman ("Wozman Reply
Decl."), Dkt. No. 88.

Prior to defendants' motions to dismiss being fully submitted, on August 17,
2018, plaintiffs requested a pre-motion conference to discuss their anticipated
motion for leave to amend the FAC to name Helen Chaitman as a defendant. *See*
Dkt. No. 74. In their letter, plaintiffs argued that their proposed amendment would
"obviate[ ] the subject matter jurisdiction concerns" raised by defendants. *Id.* at 1.
Chaitman LLP responded to plaintiffs' request on August 21, 2018, arguing that
plaintiffs' request for leave to amend should be denied. *See* Dkt. No. 77. After
hearing from the parties during a status conference on August 28, 2018, I set a
briefing schedule for plaintiffs' motion, and advised the parties that I would address
plaintiffs' motion for leave to amend in conjunction with defendants' motions to
dismiss in my report and recommendation. *See* Dkt. No. 90.

On September 21, 2018, plaintiffs moved for leave to amend their FAC to add Helen Chaitman as a named defendant. *See* Plaintiffs' Notice of Motion and Motion for Leave to Amend to Add Helen Chaitman as a Named Defendant, Dkt. No. 92; Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend to Add Helen Davis Chaitman as a Named Defendant ("Pls. Mem."), Dkt. No. 93; Affidavit of Dylan Ruga in Support of Motion for Leave to Amend to Add Helen Davis Chaitman as a Named Defendant ("Ruga Aff. for Leave to Amend"), Dkt. No. 94.[2]

On October 5, 2018, defendants submitted their respective opposition papers to plaintiffs' motion. *See* Memorandum of Law Submitted by Defendant Becker & Poliakoff in Opposition to Plaintiffs' Motion Seeking Leave to Amend to Add Helen David Chaitman as a Named Defendant ("B&P Opp. Mem."), Dkt. No. 100; Defendant Chaitman LLP's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend ("Chaitman Opp. Mem."), Dkt. No. 101; Supplemental Declaration of David Bloom, Dkt. No. 102; Supplemental Affidavit of Lourdes Blanco, Dkt. No. 102-1. On October 10, 2018, plaintiffs filed a letter to raise issues concerning B&P's discovery production and how it allegedly casts "significant doubt on B&P's position" in its motion to dismiss. *See* Dkt. No. 103. B&P submitted its response to plaintiffs' letter on October 12, 2018. *See* Dkt. No. 105.

---

[2] Plaintiffs also filed a new action against Helen Chaitman, *Kevin Shulman, et al. v. Helen Davis Chaitman*, No. 18-CV-8125 (VM) (JLC), on September 6, 2018, for the same claims asserted in the instant action in order to ensure that no claims against Helen Chaitman would be time-barred. This case was accepted as related on November 1, 2018.

In light of the parties' various dispositive motions, on October 11, 2018, I issued a Memorandum Order staying deposition discovery and reserving decision as to Chaitman LLP's request to bifurcate discovery. *See* Dkt. No. 104. On January 29, 2019, plaintiffs requested a lift of the deposition stay, but after reviewing their letter and defendants' responses, I denied plaintiffs' application. *See* Dkt. Nos. 114–17.

## II. DISCUSSION

### A. Motions to Dismiss for Lack of Subject-Matter Jurisdiction

#### 1. Standard of Review

Defendants have each moved to dismiss plaintiffs' lawsuit for lack of subject-matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure. Rule 12(h)(3) states: "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." "Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1)." *Castro v. Feliciano*, No. 16-CV-901 (WHP), 2018 WL 4265878, at *2 (S.D.N.Y. Sept. 6, 2018) (citations omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted).

11

In deciding a Rule 12 motion to dismiss, "a court must accept as true all of the material factual allegations in the complaint." *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 449 (S.D.N.Y. 2009) (citations omitted). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 178 (S.D.N.Y. 2017) (citing *Morrison*, 547 F.3d at 170). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss for lack of subject matter jurisdiction . . . , a district court may refer to evidence outside the pleadings." *Cortlandt Street Recovery Corp. v. Hellas Telecomm., S.À.R.L.*, 790 F.3d 411, 419, n.5 (2d Cir. 2015) (citing *Makarova*, 201 F.3d at 113).

### 2. Class Action Fairness Act

The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified, in part, at 28 U.S.C. § 1332(d)), "confer[s] federal jurisdiction over any class action involving '(1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states.'" *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137, 142 (2d Cir. 2014) (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir.

12

2006) (citing 28 U.S.C. §§ 1332(d)(2)(A), (5)(B), (6))); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (same).

Specifically, 28 U.S.C § 1332(d)(2)(A) provides: "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which—any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" Further, 29 U.S.C. § 1332(d)(5)(B) states that jurisdiction "shall not apply to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100." And 28 U.S.C. § 1332(d)(6) provides: "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." "Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it." *Blockbuster, Inc.*, 472 F.3d at 59. Thus, plaintiffs must demonstrate that there is a "reasonable probability" that the jurisdictional requirements of CAFA have been satisfied. *Id.*

CAFA's relaxed diversity jurisdiction standards require only minimal diversity rather than complete diversity. *See F5 Capital v. Pappas*, 856 F.3d 61, 80 (2d Cir. 2017) ("CAFA is an independent anchor of jurisdiction . . . that requires only minimal diversity . . ."). Plaintiffs are citizens of New Jersey, California, and Florida, and both B&P and Chaitman LLP are limited liability partnerships organized under the laws of New York State, with principal places of business in

13

New York, New York. *See* Pls. Opp. Mem. as to Chaitman LLP at 2, n.1; Pls. Opp

Mem. as to B&P at 3; FAC ¶¶ 11–13. In light of the parties' citizenship and the fact

that defendants do not dispute that plaintiffs have met their burden as to CAFA's

minimal diversity requirement, this element of CAFA jurisdiction has been

satisfied.

However, both defendants argue that plaintiffs have failed to meet their

burden as to CAFA's $5,000,000 amount-in-controversy requirement. Chaitman

Mem. at 4; B&P Mem. at 1. Furthermore, Chaitman LLP contends that plaintiffs

have failed to allege that the proposed class consists of 100 or more members.

Chaitman Mem. at 4.[3] In contrast, B&P does not challenge plaintiffs' satisfaction of

CAFA's class members requirement. Pls. Opp. Mem. as to B&P at 3.

---

[3] In nearly a dozen pages of its motion papers, *see* Chaitman Mem. at 14–22;
Chaitman Reply Mem. at 9–10, Chaitman LLP also argues that the Court lacks
subject-matter jurisdiction under CAFA because plaintiffs' lawsuit will never be
certified as a class action. These arguments, however, are premature. "CAFA does
not list class certification as a prerequisite to federal jurisdiction. Indeed, at the
time a CAFA action is brought in federal court, class certification will almost always
remain to be decided at some unspecified future date." *Falcon v. Philips Elec. North
America Corp.*, 489 F. Supp. 2d 367, 368 (S.D.N.Y. 2007); *see also Fleisher v.
Phoenix Life Ins. Co.*, 997 F. Supp. 2d 230, 238 (S.D.N.Y. 2014) (While the Second
Circuit has never ruled on whether jurisdiction acquired pursuant to CAFA is lost
when a case ceases to be a class action, "every Circuit court to consider the issue has
held that federal jurisdiction under CAFA does not depend on class certification; a
federal court has jurisdiction over a putative class action both before certification is
granted and after certification is denied, as long as the class originally sought to be
certified met CAFA's requirements at the time the case was filed."). Thus, the
Court need not consider Chaitman LLP's certification arguments in the current
posture of the case.

### 3.    Application

### a.    CAFA's 100 or More Class Members Requirement

In the FAC, plaintiffs allege: (1) "[Helen Chaitman] had signed up hundreds of clients who agreed to pay her hourly fees to defend them against Mr. Picard's clawback lawsuits[,]" FAC ¶ 3; (2) "[defendants] represented at least more than 40 individual clients in the BLMIS litigation, and, on information and belief, represented hundreds of such clients[,]" *id.* ¶ 24; and (3) "Chaitman LLP's website boasts that 'Chaitman *represents* approximately 1,600 Madoff customers[,]' " *id.* ¶ 46(c) (emphasis in original); *see also* Ruga Aff. as to Chaitman LLP ¶ 2, Ex. A (website), Dkt. No. 72-1, at 6.  Plaintiffs define the proposed class as "all persons who were represented by and paid legal fees to B&P and/or Chaitman LLP in connection with the BLMIS liquidation litigation."  FAC ¶ 20.  In addition to their allegations in the FAC, plaintiffs also rely on an invoice from June 2012, which shows that while at B&P, Helen Chaitman sent her clients a bill for 1/109th of the time she spent working on BLMIS-related clawback actions, thus supporting their contention that she represented at least 109 clients at that time.  *See* Pls. Opp. as to Chaitman at 7–8; Ruga Aff. as to B&P ¶ 3, Ex. B (invoice), Dkt. No. 73-1, at 7.

Chaitman LLP disputes that there are at least 100 potential members in the putative class.  Chaitman Mem. at 11; Chaitman Reply Mem. at 2.  To support its position, Chaitman LLP offers an affidavit from its office manager to demonstrate that it represents only 78 "net winners," Chaitman Reply Mem. at 2; Blanco Aff. ¶ 12 ("The number of cases we were defending as of November 29, 2017 [(the date of

the initial filing of plaintiffs' complaint)] was 78 . . . ."), but it is unclear whether

any of these 78 "cases" involved multiple clients and thus whether the number of

"net winner" clients Chaitman LLP actually represents is higher than 78.

Even if it represents only 78 "net winner" clients, Chaitman LLP offers no

explanation or authority to rebut plaintiffs' evidence demonstrating that at least

109 of Helen Chaitman's clients, whom she represented when she was at B&P, are

potential class members to this action.  Nor does it explain why the information on

its website regarding its representation of more than 1,600 Madoff customers

should be disregarded in evaluating whether plaintiffs have satisfied, at least at

this juncture, the 100-plus class members requirement.  While Chaitman LLP

contends that the proposed class must consist of "at least 100 members per

defendant," Chaitman Mem. at 4, it provides no authority to support its position.

Notably, CAFA provides that "the number of members of all proposed plaintiff

classes in the aggregate" must be at least 100.  28 U.S.C. § 1332(d)(5)(B); *see also*

*Aros v. United Rentals, Inc.*, No. 3:10-CV-73 (JCH), 2011 WL 1647471, at *4 (D.

Conn. Apr. 25, 2011) ("CAFA's plain language calls for all proposed plaintiff classes

to be aggregated.").

Chaitman LLP also asserts that plaintiffs have not satisfied their pleading

burden because the FAC does not allege that the proposed class consists of at least

100 members and only alleges "upon information and belief" that "hundreds" of

clients were represented.  Chaitman Mem. at 10–11.  It argues that "jurisdictional

16

allegations cannot be made upon information and belief." *Id.* (internal quotations marks and citations omitted).

However, contrary to Chaitman LLP's argument, Chaitman Mem. at 10–11; Chaitman Reply Mem. at 2–3, plaintiffs may make jurisdictional allegations upon information and belief if they have a good faith basis to do so. *See, e.g., Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Assocs. Mgmt. LLC*, No. 08-CV-2568 (BMC), 2008 WL 2697324, at *1–2 (E.D.N.Y. July 2, 2008) (court accepts allegations of jurisdictional facts made "upon information and belief" if made on good faith basis); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44–45 (1st Cir. 2012) (While "information and belief does not mean pure speculation . . . some latitude may be appropriate where a plausible claim may be indicated based on what is known") (internal quotation marks omitted).

Here, B&P's invoice as well as Chaitman LLP's website information demonstrate that the proposed class is made up of more than 100 members and that there is "a sound factual basis for invoking" jurisdiction based on plaintiffs' satisfaction of CAFA's class members requirement. *Sourceone Healthcare Techs., Inc.*, 2008 WL 2697324, at *2.[4] Moreover, the allegations that plaintiffs make on information and belief are as to the number of individual clients in the BLMIS

---

[4] *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, a case Chaitman LLP cites, is distinguishable because it examined statements made in an affidavit, not a complaint, when finding that only statements made on personal knowledge have value, not ones made "to the best of my knowledge and belief." Chaitman Mem. at 10 (citing 980 F.2d 1072, 1074 (7th Cir. 1992)).

litigation that defendants represented.  It is understandable that, without full

discovery on this point, plaintiffs could plead such facts only on information and

belief because such information would uniquely be in defendants' possession.  *See* 5

Charles Alan Wright et al., Federal Practice & Procedure § 1224 (3d ed., Nov. 2018

update) ("Pleading on information and belief is a desirable and essential expedient

when matters that are necessary to complete the statement of a claim are not

within the knowledge of the plaintiff but he has sufficient data to justify interposing

an allegation on the subject.").[5]

In the absence of any authority or arguments to suggest that CAFA's 100-or-

more class members requirement must be satisfied as to <u>each</u> defendant, plaintiffs

have satisfied their burden with respect to this requirement.  Considering the

invoice proffered by plaintiffs and "accept[ing] as true all of the material factual

allegations in the [FAC]," *Anirudh*, 598 F. Supp. 2d at 449, plaintiffs have

demonstrated to a "reasonable probability" that there are at least 100 (more

specifically, at least 109) members of the proposed class, as required by CAFA.

Finally, CAFA's legislative history suggests that the statute is "intended to

expand substantially federal court jurisdiction over class actions[,]" and "[i]ts

provisions should be read broadly, with a strong preference that interstate class

---

[5] While this information may be a matter of public record, at least in part, the
timing of when representation began is unlikely to be, and that will be relevant on
this issue.  In addition, the Court is unaware of any authority (and defendants have
cited none) that would require a plaintiff, in advance of initiating litigation against
a law firm in a suit of this kind, to scour PACER to identify all lawsuits brought by
that firm to determine the number of clients it had at a particular point in time.

actions should be heard in a federal court . . . ." S. Rep. 109-14, at 43 (2005), 2005

U.S.C.C.A.N. 3, 41. For example, "in cases in which it is unclear whether 'the

number of members of all proposed plaintiff classes in the aggregate is less than

100,' a federal court should err in favor of exercising jurisdiction over the matter."

S. Rep. 109-14, at 42 (2005), 2005 U.S.C.C.A.N. 3, 40. In light of both the plain

language and legislative history of CAFA, B&P's concession on this point, and the

fact that they have offered unrefuted evidence to demonstrate that the proposed

class consists of more than 100 members, plaintiffs have satisfied their burden with

respect to CAFA's class members requirement.

### b.      CAFA's $5 Million Amount in Controversy Requirement

Having satisfied the minimal diversity and class members requirements,

plaintiffs must also "show that it appears to a 'reasonable probability' that the

aggregate claims of the plaintiff class are in excess of $5 million." *Cutrone*, 749 F.3d

at 141 (quoting *Blockbuster*, 472 F.3d at 58). "In satisfying the 'reasonable

probability' burden, 'there is a rebuttable presumption that the face of the

complaint is a good faith representation of the actual amount in controversy.' "

*Hart v. Rick's NY Cabaret Intern., Inc.*, 967 F. Supp. 2d 955, 961 (S.D.N.Y. 2014)

(quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir.

2006) (citation omitted)). "To overcome the face-of-the complaint presumption, the

party opposing jurisdiction must show 'to a legal certainty' that the amount

recoverable does not meet the jurisdictional threshold." *Ebin v. Kangadis Food Inc.*,

No. 13-CV-2311 (JSR), 2013 WL 3936193, at *2 (S.D.N.Y. July 26, 2013) (quoting
*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)).

In their FAC, plaintiffs allege: (1) "[Helen] Chaitman bilked hundreds of
thousands of dollars (if not more) from each of her net winner clients by actively
discouraging them from settling Mr. Picard's clawback actions[,]" FAC ¶ 8; (2) "the
amount in controversy . . . exceeds $5,000,000, . . . " *id.* ¶ 16; (3) "[plaintiffs] and the
members of the proposed class pray for an award of punitive damages . . . ," *id.* ¶ 57;
and (4) "the proposed class [ ] pray that the Court order disgorgement and
restitution of any and all attorneys' fees paid to [defendants] . . . ," *id.* ¶ 69. In their
prayer for relief they also seek attorneys' fees and costs associated with bringing
this action. Plaintiffs contend that their allegations were "made in good faith with
sufficient factual content to back it up: the FAC alleges hundreds of clients (¶¶ 3,
20, 46(c)), each of whom executed retainers for hourly-fee or contingency-fee
representation (¶¶ 38–45), for legal work related to a multi-billion dollar Ponzi
scheme (¶¶ 29-37)." Pls. Opp. Mem. as to B&P at 5.

In their motion papers, defendants identify the amount of fees collected by
each law firm for the matters giving rise to this action. According to B&P, it has
collected at least $3,204,774 in fees during the relevant time period. *See* B&P Reply
Mem. at 5–6; Wozman Decl., Ex. A (spreadsheet) at 20, Dkt. No. 59-1; DiGioia Aff.,
Ex. A (ledger) at 2–10, Dkt. No. 60-1; Wozman Reply Decl., Ex. A: B&P Responses
to Plaintiffs' Second Set of Interrogatories at 4, 6, Dkt. No. 88-1. Separately,
according to Chaitman LLP, it has collected at least $2,761,610.69 in fees during

the subject period.  Chaitman Reply Mem. at 6; Blanco Aff. ¶¶ 5–10.  In the

aggregate, these amounts equal $5,966,384.69 and thus exceed the $5,000,000

required amount-in-controversy.

However, defendants argue that plaintiffs' damages against each defendant

law firm cannot be aggregated to satisfy CAFA's amount-in-controversy

requirement because defendants are not jointly liable for plaintiffs' claims and

cannot be held jointly liable for the disgorgement of one another's legal fees.

Chaitman Mem. at 12–13; B&P Mem. at 7–8.  Defendants point out that the FAC

does not plead that defendants are jointly liable and contend that the $5,000,000

amount-in-controversy requirement must be satisfied as to each defendant.

Chaitman Mem. at 13; B&P Mem. at 8.[6]

In opposing defendants' position, plaintiffs rely on the statutory language of

CAFA, 28 U.S.C. §§ 1332(d)(2) and (6), to argue that the damages against each

---

[6] Defendants are correct that the FAC does not plead that Chaitman LLP and B&P
are jointly liable.  *See* Chaitman Mem. at 13; B&P Mem. at 8.  They are also correct
that the defendant law firms are not jointly liable to each other "because [B&P]
cannot be made to disgorge the profit received from [ ] Chaitman LLP and [ ]
Chaitman LLP cannot be made to disgorge the profit received from [B&P]."  B&P
Reply Mem. at 10 (citing *Quintel Corp., N.V. v. Citibank, N.A.*, 596 F. Supp. 797,
804 (S.D.N.Y. 1984)); *see also* Chaitman Reply Mem. at 6–7 (citing *MCA, Inc. v.
Wilson*, 677 F.2d 180, 186 (2d Cir. 1981) (one defendant not liable for profit made by
another); *Quintel Corp., N.V.*, 596 F. Supp. at 804 (although joint tortfeasors are
jointly liable for actual damages, it is not appropriate to impose windfall damages,
the purpose of which is to prevent unjust enrichment, on defendant who did not
receive the windfall profits)).  On their part, plaintiffs do not allege or argue that
the defendant law firms are jointly liable to each other, essentially conceding that
point.  The fact that the defendant law firms are not jointly liable, however, does
not end the Court's inquiry.

defendant may be aggregated to meet the $5,000,000 requirement. Pls. Opp. Mem as to Chaitman at 10; Pls. Opp. Mem. as to B&P at 7. They also rely on the Supreme Court's decision in *Standard Fire Ins. Co. v. Knowles*, which observes: "[CAFA] tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [plaintiffs'] proposed class and determine whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case." 568 U.S. 588, 592 (2013); Pls. Opp. Mem. as to Chaitman at 10; Pls. Opp. Mem. as to B&P at 7. Plaintiffs argue that defendants' motions should be denied because they have not proven to a "legal certainty" that plaintiffs' claims are for less than $5,000,000. Pls. Opp. Mem. as to Chaitman at 14; Pls. Opp. Mem. as to B&P at 1, 6.

Chaitman LLP relies on two out-of-district cases to support its contention that "[w]hile CAFA permits aggregation of claims of separate plaintiffs . . . claims against multiple defendants can only be aggregated when the defendants are jointly liable." Chaitman Mem. at 12 (citing *Vagle v. Archstone Communities, LLC*, No. CV 13-09044 (RGK) (AJWx), 2014 WL 463532 (C.D. Cal. Feb. 5, 2014); *Hollinger v. Home State Cty. Mut. Ins. Co.*, No. 5:09-CV-118, 2010 WL 11530632 (E.D. Tex. Aug. 5, 2010)). It argues that the damages against each defendant are identifiable and separate; and that plaintiffs' claims arise from allegations that each co-defendant breached separate contracts and separately owed fiduciary duties, was enriched by fees that were separately collected, and engaged in intentional misconduct which can only be claimed against a single actor. Chaitman Mem. at 13.

22

B&P also cites to *Vagle* and offers two additional out-of-district cases to support defendants' common contention that claims against multiple defendants can only be aggregated when the defendants are jointly liable. *See* B&P Mem. at 7 (quoting *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001) ("[W]hen there are two or more defendants, [a] plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement *only if the defendants are jointly liable*; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant.") (emphasis in original); citing *Castillo v. Western Range Assoc.*, No. 3:16-CV-00237 (RCJ) (VPC), 2017 WL 1364584 (D. Nev. Apr. 13, 2017)). B&P argues that "this is an action to disgorge legal fees allegedly paid to two separate, unaffiliated law firms, during two successive, distinct time periods," B&P Mem. at 6–7, and the putative class must satisfy the amount-in-controversy requirement against each defendant, B&P Reply Mem. at 1–2.

As applied here, these non-binding authorities are not persuasive because they are factually distinguishable from this lawsuit and/or rely on pre-CAFA or non-CAFA cases to support defendants' proposition that aggregation of damages against multiple defendants is permissible only if defendants are jointly liable. *Middle Tenn. News Co.* is not a CAFA case and thus is inapplicable. *Castillo* is a wage-and-hour class action that "essentially consist[ed] of two parallel class actions asserting like claims under similar factual circumstances," but each representative plaintiff's claims were brought against two different sets of employer-defendants and were

23

"wholly unrelated to the claims of the other." 2017 WL 1364584, at *8. In *Vagle*, different classes of tenants, who lived in different apartment buildings, asserted claims against different management companies and as a result the *Vagle* court was not persuaded that, under those circumstances, potential damages against all defendants should be aggregated to determine the amount in controversy. 2014 WL 463532, at *3. In addition, the non-aggregation standard articulated in *Hollinger* should not be applied to this case because it is based on traditional diversity principles and as such relies solely on pre-CAFA and non-CAFA cases. 2010 WL 11530632, at *9.

The non-aggregation standards articulated in these cases do not apply here because plaintiffs and other potential class members make up the same group of clients who were represented by the same attorney in the same underlying BLMIS litigation during the two successive time periods when Helen Chaitman worked at B&P and then at Chaitman LLP. The claims brought against B&P are wholly related to the claims brought against Chaitman LLP and all arise from the common denominator of Helen Chaitman's representation of plaintiffs and the putative class in their BLMIS lawsuits.

Although I did not find any additional authorities in this Circuit addressing the issue of whether aggregating damages against multiple defendants, absent joint liability, is permissible in order to meet CAFA's amount-in-controversy requirement, the Supreme Court in *Exxon Mobil Corp. v. Allapattah Services, Inc.* did recognize that CAFA "abrogates the [traditional] rule against aggregating

claims." 545 U.S. 546, 571 (2005). Moreover, the Second Circuit in *Blockbuster* found that "[u]nlike the general diversity statute . . . CAFA explicitly provides for aggregation of each class member's claims in determining whether the amount of controversy is at least $5,000,000." 472 F.3d at 59 (citing 28 U.S.C. § 1332(d)(6)). *See also Nguyen v. FXCM Inc.*, No. 17-CV-2729 (PAC) (HBP), No. 17-CV-4699 (PAC) (HBP), 2019 WL 416328, at *6 (S.D.N.Y. Feb. 1, 2019) (CAFA explicitly provides for aggregation of claims in determining amount in controversy).

In the absence of any direct authority, CAFA's statutory language should control. CAFA explicitly provides: "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . ." 28 U.S.C. § 1332(d)(2). It also provides: "claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6). Indeed, this separate section delineating CAFA's departure from the traditional non-aggregation rule appears deliberate. As previously discussed with respect to CAFA's class members requirement, such an interpretation would be consistent with the overall spirit of CAFA—to expand federal jurisdiction over class actions. *See* S. Rep. No. 109-14, at 43, 2005 U.S.C.C.A.N. 3, 41 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court . . ."). Even in uncertain cases, CAFA's legislative history suggests inclusion into the federal courts. *See* S.

Rep. No. 109-14, at 42, 2005 U.S.C.C.A.N. 3, 40 (with respect to § 1332(d)(6): "[t]he Committee intends this subsection to be interpreted expansively. . . . And if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."). In light of CAFA's statutory language and legislative history, defendants' arguments against aggregation of damages in this case are unpersuasive.

Here, defendants have offered evidence demonstrating that the aggregate amount of fees collected by them from their BLMIS clients alone—without considering plaintiffs' other potential damages—equals $5,966,384.69 ($3,204,774 on B&P's part and $2,761,610.69 on Chaitman LLP's part). This amount exceeds CAFA's $5,000,000 threshold. Thus, defendants' own evidence establishes that CAFA's amount-in-controversy requirement has been satisfied.

Presumably, if Helen Chaitman had not left B&P and started her own law firm, the amount-in-controversy would not even be an issue in this case, given this aggregate amount of fees. It would be an anomalous result, therefore, if the Court were to find in the face of the particular facts of this case and the legislative history of CAFA that it lacked subject-matter jurisdiction and the dispute should be litigated in state court. Moreover, as is discussed below, if Helen Chaitman herself

needs to be added as a defendant in this case to ensure there is a sufficient

predicate for liability, then plaintiffs' motion to amend should be granted.[7]

**B.    Motion for Leave to Amend the First Amended Complaint**

In light of the conclusion that there is subject-matter jurisdiction over both

defendants on the current record, it is not necessary to reach plaintiffs' motion for

leave to further amend the pleadings to add Helen Chaitman as a named defendant

in this lawsuit.  However, should the reviewing Court disagree with that conclusion,

---

[7] Plaintiffs argue separately that their claim for punitive damages is "properly alleged and, when considered in conjunction with the other amounts in controversy, plainly demonstrate[s] that there is more than $5 million at issue as to B&P." Pls. Opp. Mem. as to B&P at 12.  Defendants counter that such damages are not recoverable here and therefore cannot be included in the amount-in-controversy calculation.  *See* B&P Mem. at 9–12; Chaitman Mem. at 13, n.2.  "[T]he Court may consider [an] amount claimed for punitive damages in determining whether CAFA's jurisdictional amount requirement is met." *Abdale v. North Shore-Long Island Jewish Health System, Inc.*, No. 13-CV-1238 (JS) (WDW), 2014 WL 2945741, at *5 (E.D.N.Y. June 30, 2014).  Moreover, plaintiffs "do[ ] not have to prove that [they are] more likely than not to ultimately recover punitive damages, but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages could exceed $5,000,000." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (citation omitted).  Under New York law, "[p]unitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited." *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 400 (S.D.N.Y. 2000); *see also Amusement Industry, Inc. v. Stern*, 693 F. Supp. 2d 301, 317–18 (S.D.N.Y. 2010) (punitive damages for breach of fiduciary duty may be sought against attorneys).

On the record presented, however, plaintiffs have not provided any amounts to be considered when assessing punitive damages.  Thus, in these circumstances, "[u]sing [punitive damages] to calculate the amount in controversy would [ ] require [the Court] to engage in unguided speculation," which it cannot do. *Porter v. MetroPCS Comm. Inc.*, 592 F. App'x 780, 784 (11th Cir. 2014).  Therefore, in the absence of an ascertainable value, punitive damages should not be included in the amount-in-controversy calculation.  Similarly, plaintiffs' claim for attorneys' fees is not sufficiently developed to be accounted for on this issue at this time.

then for the reasons discussed below the proposed amendment should be permitted to cure any purported jurisdictional deficiency.

## 1.   Standard of Review

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that in cases in which a party has already amended its pleadings once as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While a district court should "freely give leave [to amend] when justice so requires," *id.*, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). " 'Where . . . a scheduling order governs amendments to the complaint,' and a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must show good cause to modify the deadline under Rule 16." *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)). "Whether good cause exists turns on the diligence of the moving party." *Holmes*, 568 F.3d at 335 (citation omitted).

"While motions to amend are generally governed by Rule 15(a), Rule 21 controls if the proposed amendment adds new parties." *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05-CV-6430 (VM) (JCF), 2008 WL 113672, at \*2 (S.D.N.Y. Jan. 10, 2008), *adopted by Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408 (S.D.N.Y. Feb. 15, 2008). Rule 21 states: "the court may at any

28

time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "In deciding whether
to permit joinder, courts apply the 'same standard of liberality afforded to motions
to amend pleadings under Rule 15.'" *Bridgeport Music Inc.*, 2008 WL 1135672, at
*2 (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980)).

### 2.   Application

As a threshold matter, the parties do not dispute that their joint proposed
scheduling order indicated a June 8, 2018 deadline to amend any pleadings. *See*
Pls. Mem. at 4; Chaitman Opp. Mem. at 7.  However, there is no order on the docket
reflecting that June 8 deadline.  While the parties emailed a joint proposed
scheduling order to the Court on June 20, 2018, indicating their agreement to a
June 8 deadline to amend or join parties, *see* Ruga Aff. for Leave to Amend ¶ 3;
Chaitman Opp. Mem. at 7, this deadline was not included in the June 22, 2018
scheduling order, *see* Dkt. No. 42, and the parties did not address this deadline at
the June 22, 2018 initial pre-trial conference or seek to include this deadline in any
court order anytime thereafter.  Under these circumstances, Rule 15's liberal
amendment standard should apply but, in any event, there is good cause to add
Helen Chaitman as a defendant to this case.

Based on the conclusions contained in this Report, it is not necessary for
plaintiffs to add Helen Chaitman as a defendant to satisfy CAFA's jurisdictional
requirements; nonetheless, there is good cause to grant plaintiffs' motion in light of
Helen Chaitman's involvement in the underlying BLMIS litigation.  It is evident
that Helen Chaitman "is the focal point of this action" because she was "the

principal attorney for plaintiffs and proposed class members at both [B&P and Chaitman LLP]." Pls. Mem. at 8–9. She has been identified in all parties' Rule 26(a) initial disclosures and has been the focus of plaintiffs' allegations and discovery. *Id.* at 9. Helen Chaitman has been the managing partner of Chaitman LLP since it was formed in September 2015. Chaitman Decl. ¶ 2. Prior to that time, she was a shareholder of B&P from February 2010 to September 18, 2015. DiGioia Aff. ¶ 5.

New York Partnership Law provides: "each partner, employee or agent of a partnership which is a registered limited liability partnership shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by . . . her . . . while rendering professional services on behalf of such registered limited liability partnership . . ." N.Y. Partnership Law § 26(c)(i) (McKinney). It also provides: "each shareholder . . . of a . . . registered limited liability partnership . . . that is a partner, employee or agent of a partnership which is a registered limited liability partnership shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by . . . her . . . while rendering professional services in . . . her capacity as a partner, employee or agent of such registered limited liability partnership." *Id.* § 26(c)(ii). Here, there is no dispute that defendants are limited liability partnership law firms and the FAC sufficiently alleges facts with respect to Helen Chaitman's representation of plaintiffs and the putative class. In light of plaintiffs' allegations and her positions

at each defendant law firm, Helen Chaitman's purported misconduct exposes her to liability in this lawsuit under New York's partnership laws.

For the most part, defendants argue that plaintiffs' proposed amendment is a futile attempt to cure jurisdictional defects, but in those same arguments they acknowledge Helen Chaitman's potential liability in this lawsuit.  Chaitman LLP observes that plaintiffs "could . . . allege that [Helen] Chaitman is jointly and severally liable with Chaitman LLP (*i.e.* after September 2015, during her tenure as a partner of [Chaitman LLP]) and/or that she is jointly and severally liable with [B&P] (*i.e.* before September 2015, during her tenure as a partner of [B&P])." Chaitman Opp. Mem. at 16.  B&P also recognizes that under New York's partnership laws, it "would be jointly liable with [Helen] Chaitman for the alleged wrongful acts she committed on behalf of [B&P] within the reasonable scope of the firm's business" from February 2010 through September 2015.  B&P Opp. Mem. at 5; B&P Reply Mem. at 9–10.  B&P further suggests that "[Helen] Chaitman may be individually liable for the approximately $2.7 million in fees her current firm [(Chaitman LLP)] collected in the matters giving rise to this suit, since those fees were generated as a result of the acts she committed on behalf of Chaitman LLP." *Id.* at 5–6.  While no determination as to the allocation of any party's liability need be made at this stage of the lawsuit, New York's partnership laws support the addition of Helen Chaitman as a party at this juncture of the proceedings.

It is also noteworthy that plaintiffs are not seeking to add any new claims and are prepared to voluntarily dismiss the pending related action against Helen

Chaitman if their motion to amend is granted.  Pls. Mem. at 9, 16.  *See Bridgeport Music, Inc.*, 248 F.R.D. at 415 (motion to amend granted because "[t]he interests of judicial economy [ ] favor adding [new defendant] as a party to this action over deferring claims against it to separate future action.  The plaintiffs' claims against [new defendant] are identical to those already in the case . . ."); *Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc.*, No. 96-CV-1829 (DF), 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) (motion to amend granted even though proposed amendments would add additional parties because claims against additional parties are identical to those raised in original complaint and defendants did not show that addition of parties would affect duration or scope of discovery).

As to defendants' other arguments, Chaitman LLP claims that plaintiffs' motion should be denied, in part, because of plaintiffs' delay, *see* Chaitman Opp. Mem. at 11, and B&P points out that plaintiffs' motion is procedurally defective because it does not include a proposed amended complaint.  *See* B&P Opp. Mem. at 1.  Indeed, plaintiffs failed to comply with proper motion practice in that regard. Moreover, Chaitman LLP's point is well-taken—"[p]laintiffs were well aware of the extent of [Helen] Chaitman's involvement in the underlying representation," Chaitman Opp. Mem. at 10, and should have acted more expeditiously to name her as a defendant.

But this case is still relatively in its early stages and the parties have not taken any depositions to date due to the stay imposed by the Court.  Procedural deficiencies and delay alone are insufficient reasons to prohibit plaintiffs' proposed

amendment, especially in the absence of any arguments relating to bad faith or undue prejudice (which defendants do not assert). *See, e.g., Hinds Cty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 626 (S.D.N.Y. 2012) ("Delay alone, in the absence of an additional reason such as prejudice to the opposing party, usually does not warrant denial of leave to amend.") (citation omitted).  The balance of considerations thus weighs in favor of granting plaintiffs' motion.

### III.   CONCLUSION

For the foregoing reasons, the Court has jurisdiction over this lawsuit under the Class Action Fairness Act as there is minimal diversity, there are more than 100 potential class members, and the amount in controversy exceeds $5,000,000. Therefore, I recommend that defendants' motions to dismiss for lack of subject-matter jurisdiction be denied.  In addition, plaintiffs have established good cause to amend the First Amended Complaint to add Helen Chaitman as defendant should it be necessary to do so for jurisdictional purposes.  Therefore, I recommend that plaintiffs' motion to amend be granted.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New

York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Marrero.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:      April 11, 2019
            New York, New York

JAMES L. COTT
United States Magistrate Judge